## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CATHY G.,

                                    Plaintiff,

      v.

                                          1:21-CV-823

KILOLO KIJAKAZI, ACTING                     (ATB)
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

PETER A. GORTON, ESQ., for Plaintiff
NATASHA OELTJEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

### MEMORANDUM-DECISION AND ORDER

This matter was referred to me, with the consent of the parties, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and N.D.N.Y. Local Rule 73.1. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On September 9, 2019, plaintiff filed an application for disability insurance benefits ("DIB"), alleging that she became disabled on May 5, 2016. (Administrative Transcript ("T.") 10, 115). The claim was denied initially on October 10, 2019. (T. 10). Plaintiff requested a hearing, which was held on November 2, 2020 before Administrative Law Judge ("ALJ") Brian LeCours. (T. 10, 110). The hearing was held virtually over the telephone because of the COVID-19 pandemic. (T. 110). Plaintiff testified at the hearing, accompanied by a non-attorney representative. (T. 10).

Vocational expert Edmond Calandra also testified at the hearing.  (T. 141).  ALJ LeCours issued an unfavorable decision on December 2, 2020 (T. 10-21), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 10, 2021.  (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is

whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

### C.   Severe Impairments

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). It is the claimant's burden to present evidence demonstrating severity at step two. *See Briggs v. Astrue*, No. 09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011), report and recommendation adopted, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight

4

abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, No. 11-CV-620S, 2012 WL 3860800, *3 (W.D.N.Y. Sept. 5, 2012) (citation omitted). *See also Schifano v. Astrue*, No. 12-CV-484S, 2013 WL 2898058, *3 (W.D.N.Y. June 13, 2013) ("[a]n impairment is severe if it causes more than a de minimis limitation to a claimant's physical or mental ability to do basic work activities").

Moreover, where the claimant's alleged disability includes mental components, at steps two and three the ALJ must also apply the so-called "special technique." *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). *See also* 20 C.F.R. §§ 404.1520a(b)-(e). Specifically, the ALJ must rate the claimant's "degree of functional limitation resulting from" a medically determinable mental impairment in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)-(c).

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (quoting *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered

separately, would be of sufficient severity.  20 C.F.R. §§ 404.1523(c), 416.923(c).

## III.  **FACTS**

Plaintiff was 56 years old on the date of the administrative hearing.  (T. 114).
She was a high school graduate who lived with her fifteen year-old son.  (*Id.*)  Plaintiff
owned a pickup truck and was able to drive for approximately thirty minutes before
needing to pull over.  (T. 129-31).

Plaintiff was most recently employed as a collections clerk at DentServ, having
worked in that position from 2001 through 2014.  (T. 114, 344).  Before her
employment with DentServ, she worked at four other companies as a collections clerk.
(T. 344-45).  Plaintiff testified that she cannot work a full-time job anymore because
she cannot tolerate long periods of sitting, standing, or lifting.  (T. 115-16).  She also
mentioned "emotional stuff" interfering with her ability to find full-time work.  (T.
116).  The plaintiff testified that she looked for work for two years and was unable to
find employment.  (T. 129).

Plaintiff's physical impairments include bilateral knee osteoarthritis, morbid
obesity, right-sided hearing loss, and a pinched nerve in her neck.  (T. 12).  Plaintiff
testified that arthritis in her knees causes difficulty sitting and standing for long periods
of time.  (T. 117).  She also testified that the pain and complications from the arthritis in
her knees worsened in 2016.  (T. 122).  From 2016 through 2018, she could walk for
approximately half an hour and needed to rotate between sitting and standing every
fifteen to thirty minutes.  (T. 122-24).  The plaintiff further testified that the pinched
nerve in her neck causes the left side of her to go numb, making it difficult for her to

lift anything.  (T. 117, 118-19).

The plaintiff testified that she took over-the-counter Advil for pain, but did not take prescription pain medicine because she was allergic to different pain medications. (T. 126-27).  The plaintiff testified that Dr. Garland proposed prescribing blood pressure medicine, but the plaintiff refused because she believed that her blood pressure was only high during her doctor visits.  (T. 138-39).  The plaintiff was also taking Tamoxifen, which caused additional joint pain.  (T. 127).  She does not use any assistive devices, such as a walker or cane, to improve her mobility.  (T. 131-32).

The plaintiff testified that she was being treated by licensed clinical social worker ("LCSW") Jennifer Parker for "[d]epression, posttraumatic stress . . . [a]nxiety [and] panic attacks."  (T. 134-35).[1]  Plaintiff testified that her panic attacks can last anywhere from twenty minutes to an hour and have caused seizures in the past.  (T. 135, 138).  Dr. Garfield prescribed lorazepam for panic attacks, which plaintiff takes twice daily.  (T. 135-36).  Dr. Garfield wanted to prescribe antidepressants, but the plaintiff did not like the side effects.  (T. 136).  LCSW Parker submitted three letters considered by the ALJ which opined, inter alia, that plaintiff suffered from anxiety, depression, and Post-Traumatic Stress Syndrome ("PTSD").  (T. 695, 752, 772). LCSW Parker noted, inter alia, that plaintiff's emotional status, following the death of her mother and her life partner of 20 years, "interferes with [her] her daily living activities" (T. 772), and would make it "difficult, if not impossible for [plaintiff] to maintain employment in a full time capacity if at all."  (T. 695).

---

[1] Before being treated by LCSW Parker, the plaintiff attended bimonthly counseling sessions with Bernadette Winters Bell.  (T. 33-35).

The ALJ called VE Edmond Calandra to testify at the hearing.  (T. 141-43).  VE Calandra reviewed the vocational evidence and was present for the plaintiff's testimony by telephone.  (T. 141-44).  In response to the ALJ's hypothetical questions, the VE opined that a person who could perform light and sedentary work, with additional limitations specified by the ALJ, could do plaintiff's past work as a collections clerk, both as she performed it and as that job is generally performed.  (T. 142-43).[2]  Based on other hypothetical questions, the VE stated that an individual who would "be off task more than 15 percent of the workday due to symptoms and/or the need for additional unscheduled breaks" could not perform gainful employment.  (T. 143).  The VE also determined that an individual who "would likely miss more than two days of work per month due to symptom exacerbation" also could not perform gainful employment.  (*Id.*)

## IV.   **THE ALJ'S DECISION**

The ALJ first determined that plaintiff met the insured status requirements for DIB through December 31, 2018.  (T. 12).  The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 5, 2016 through her date last insured of December 31, 2018.  (T. 12).  Next, the ALJ found that plaintiff had the following severe impairments: bilateral knee osteoarthritis, morbid obesity, and right-sided hearing loss.  (T. 12-15).  He determined that the plaintiff's "medically determinable mental impairment of anxiety did not cause more than minimal limitation in the [plaintiff's]

---

[2] The transcript of the administrative hearing reflects an inaudible portion during which the VE expressed this opinion, but the context of the audible portions of the hearing and the ALJ's opinion make clear that the VE opined that plaintiff could perform her past work with either a light or sedentary RFC, with additional limitations.

ability to perform basic mental work activities and was therefore nonsevere." (T. 13-15).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 15).

The ALJ found, at step four of the analysis, that plaintiff had the RFC to perform light work with certain additional limitations.  (T. 18-21).  Specifically, the ALJ found that plaintiff could stand/walk for only four out of eight hours, but could sit for six out of eight hours.  Plaintiff could occasionally balance, stoop, kneel, crawl and climb ramps, stairs, ladders, ropes or scaffolds.  (T. 16-17).  Additionally, the ALJ found that plaintiff cannot work in loud work environments, defined as noise intensity level four and above.  (T. 17).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 17).  The ALJ further noted that he considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520c.  (*Id.*)

The ALJ found that plaintiff's alleged symptoms could reasonably be expected to stem from the plaintiff's medically determinable impairments, but the "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. 18).  The ALJ then determined that plaintiff was capable of performing her past

relevant as work as a collections clerk.  (T. 20).  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 5, 2016 through the date last insured.  (T. 20).

## V.  <u>ISSUES IN CONTENTION</u>

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence or is tainted by prejudicial error:

1.   The ALJ's erred in failing to obtain supporting treatment records from Licensed Clinical Social Worker ("LCSW") Jennifer Parker. (Pl.'s Br. at 1 (Dkt. No. 9).

2.   The ALJ erred by failing to find that the *de minimis* standard was met with respect to plaintiff's mental health limitations, which the ALJ found to be nonsevere.  (Pl.'s Br. at 1).

3.   The Appeals Council erred by discounting the mental health treatment notes that LCSW Parker submitted after the ALJ's decisions, despite the fact that the ALJ cited the lack of such supporting records in finding LCSW Parker's opinions unpersuasive. (Pl.'s Br. at 1).

Defendant argues that the ALJ's decision was supported by substantial evidence, and the court should affirm the ALJ's decision.  (Def.'s Br. at 1-17) (Dkt. No. 12).  For the following reasons, this court finds that the ALJ committed prejudicial error by (1) making a determination that plaintiff's mental health impairments were not severe, notwithstanding the fact that there was insufficient medical opinion and other evidence in the record to make that finding and (2) relying on his lay evaluation of underlying medical records to make the nonseverity determination, while discounting the only relevant opinion evidence, without fully and fairly developing the record.

## VI.   DEVELOPING THE ADMINISTRATIVE RECORD

### A.   Legal Standards

#### 1.   Duty to Develop Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing." *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Hum. Servs. of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")). Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851(ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (quoting *Champion v. Berryhill*, No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept. 14, 2017) (other citations omitted)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical

sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

Whether the ALJ has satisfied her duty to develop the record is a threshold question.  *Matthew D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-793 (TJM); 2021 WL 1439669, at *6 (N.D.N.Y. Apr. 16, 2021).  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)).

Remand is appropriate where the ALJ's duty to develop the record is not discharged.  *Matthew D.*, 2021 WL 1439669, at *6; *see also Moran v. Astrue*, 569 F.3d

108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").  To satisfy this duty, "an ALJ should have medical evidence from a medical source with a sufficiently persuasive opinion noting the existence and severity of a disability."  *See Jackson v. Kijakazi*, No. 20-CV-7476; 2022 WL 620046, at *17 (S.D.N.Y. Mar. 3, 2022) (citation omitted).

## 2.   Consultative Examination

"'The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record.'" *Beau M. v. Comm'r of Soc. Sec.*, No. 8:18-CV-1170 (ATB), 2020 WL 586868, at *9 (N.D.N.Y. Feb. 6, 2020) (quoting *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (citing 20 C.F.R. § 404.1519a(b)(4); *Simon v. Colvin*, No. 6:12-CV-6381, 2013 WL 4094612, at *6-7 (W.D.N.Y. Aug. 13, 2013)). "'Where a plaintiff suggests a possible mental impairment, the ALJ must assess whether there is any evidence of work-related functional limitations resulting from the possible mental impairment which have not been adequately addressed in the record.'" *Id.* (quoting *Brown v. Astrue*, No. 11-CV-6392(T), 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012) (citing *Haskins v. Comm'r of Soc. Sec.*, No. 5:05-CV-292, 2008 WL 511378, at *7, n. 5 (N.D.N.Y. Nov. 25, 2008)).

## 3.   Applying Lay Judgment in Lieu of Medical Opinion Evidence

"[A]lthough an ALJ may make common sense judgments where the medical

evidence shows minor impairments, the ALJ may not substitute his or her own lay opinion for that of a medical professional when the record contains complex findings or indicates severe impairments." *Roberts v. Comm'r of Soc. Sec.*, No. 1:19-CV-0651, 2020 WL 5554516, at *4-5 (W.D.N.Y. Sept. 17, 2020).  "[T]he leeway given to ALJs to make common sense judgments does not necessarily extend to the assessment of mental limitations, which are by their very nature highly complex and individualized." *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018); *Nasci v. Colvin*, No. 6:15-CV-0947(GTS), 2017 WL 902135, at *9 (N.D.N.Y. Mar. 7, 2017) (citing, inter alia, SSR 85-15, 1985 WL 569857, at *5 ("Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings.  Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult.")).

B.     **Analysis**

Plaintiff engaged in mental health treatment in the form of bi-monthly therapy sessions with Bernadette Winters Bell, and then with LCSW Jennifer Parker.  (T. 33, 35, 772).  The only opinion evidence of record regarding plaintiff's vocational mental health limitations was that of LCSW Parker, who submitted three letters, indicating that the plaintiff's work-related functions would be negatively impacted by her mental impairments.  (T. 695, 752, 772).  In her last letter, dated October 17, 2020, after 40 therapy sessions, with plaintiff, LCSW Parker advised the Commissioner, inter alia:

> Through-out our work together, Ms. G[] has not maintained a consistent ability
> to regulate her emotions due to her trauma history which greatly affects her daily

14

living.

    Ms. G[] will have uncontrollable, extreme, sudden bouts of crying that are triggered by  thoughts related to her late husband, concerns for her child's well-being, empathy for others,  holidays, and more. These bouts occur 3-4 times a week and can last for hours as verified by her son. . . . This type of emotional outburst is consistent with clients  suffering from PTSD and in Ms. G[]'s case has led to withdraw socially and interferes with  daily living activities.

(T. 772).

    Prior to the ALJ's decision, Ms. Parker apparently declined to provide her underlying treatment records.  At the administrative hearing, the plaintiff's representative informed the ALJ that the letters that Ms. Parker provided "was all she would give me," which the ALJ acknowledged by responding "[n]o running records, okay."  (T. 135).  At the end of the hearing, the ALJ closed the record for decision and did not subpoena the treatment records of LCSW Parker.  (T. 144).  In his decision, the ALJ gave little weight to Parker's conclusion for the following reasons (1) the ALJ found that LCSW Parker was not an acceptable medical source;[3] (2) the record contained none of her underlying treatment records; (3) LCSW Parker's statements about the plaintiff's limited functioning was vague; and (4) the available treatment records in the record do not support the limitations found by LCSW Parker.  (T. 14-15).

    The medical evidence of record clearly indicates that plaintiff had mental impairments, and the ALJ acknowledged that plaintiff had a medically determinable

---

[3] "[W]hile social workers . . . are still not considered acceptable medical sources, it has been held that the opinions of therapists should nonetheless be independently evaluated 'on key issues such as impairment severity and functional effects.'"  *Otero v. Kijakasi*, No. 20-CV-7612, 2022 WL 1051164, at *18 (S.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 951061 (S.D.N.Y. Mar. 30, 2022) (citing *VanGorden v. Astrue*, No. 3:11-CV-1044 (GLS), 2013 WL 420761, at *2 (N.D.N.Y. Feb. 1, 2013)).

impairment of anxiety.  (T. 13, 492, 501, 513, 531-34, 539, 542-43, 557, 559-60, 567, 580, 587, 762-764).  Drs. Anderson and Hoffman–the two state-agency medical consultants who reviewed the medical evidence then of record–both found that plaintiff suffered from a mental impairment, but concluded that they did not have sufficient evidence to determine the severity of the impairment.  (T. 14, 150, 159, 173, 177).  The ALJ, however, did not opt to arrange for a mental health consultant to examine plaintiff and evaluate her mental health symptoms and limitations.  Instead, the ALJ proceeded to consider "the broad functional areas of mental functioning set out in the disability regulations . . . known as the 'paragraph B' criteria," applying his lay analysis of the non-opinion medical evidence in the record, and considering plaintiff's prior statements and her activities of daily living.  (T. 13-14).  Plaintiff's RFC recognized no limitations based on plaintiff's mental health impairments and the section of his opinion supporting his RFC made no mention of plaintiff's mental health issues.[4]

The medical records available to the ALJ were not, as the two state agency medical consultants concluded, sufficient to determine the severity of plaintiff's mental

---

[4] Case law cited in section II. C., above, suggests that an ALJ's error in finding an impairment nonsevere could be harmless if the ALJ considers any effect of that impairment, along with other impairments found to be severe, in the subsequent steps of the sequential analysis, including the determination of the claimant's RFC.  That case law would not support a finding of harmless error in this case because the ALJ's opinion indicates that he did not consider the effect of any mental health impairment in his subsequent analysis or in the determination of plaintiff's RFC.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("Having found that any functional limitations associated with Parker-Grose's mental impairment were mild and only minimally affected her capacity to work, the ALJ did not take these restrictions into account when determining her residual functional capacity.  Accordingly, in this case, the error made by the ALJ at step two was not harmless.").

16

impairments and how they would limit the plaintiff's work-related functions.  The underlying treatment notes from LCSW Parker were missing from the record, which the ALJ not only acknowledged, but specifically cited as one of his reasons for discounting the social worker's opinions.  (T. 14-15).  The court concludes that this reflects an appreciable gap in the record regarding the plaintiff's mental health limitations, and that the ALJ erred in not taking steps to complete the record, by ordering a mental health consultative examination and/or by subpoenaing LCSW Parker's treatment notes.

### 1.    LCSW Parker's Missing Treatment Notes

Although the Second Circuit has explained that the decision to issue a subpoena is within the "sound discretion" of the ALJ, the ALJ's discretion is not unlimited, and "he cannot ignore essential available medical evidence."  *Outman v. Comm'r of Soc. Sec.*, No. 1:16-CV-00988, 2018 WL 3688312, at *2 (W.D.N.Y. Aug. 2, 2018); *see also Kumar v. Berryhill*, No. 3:16-CV-01196, 2017 WL 4273093, at *5 (D. Conn. Sept. 26, 2017) ("[A] failure to subpoena medical records which were 'reasonably necessary' is harmful error.").  Here, in light of the lack of treatment notes from LCSW Parker, which the ALJ cited as a basis for discounting the only relevant opinion evidence of record, he should have made "every reasonable effort" to fully develop the record, instead of by determining severity based on his lay evaluation of the limited medical evidence of record.[5]  *See, e.g.*, *Davis v. Colvin*, No. 15-CV-479, 2016 WL 4708515, at *7-8 (W.D.N.Y. Sept. 9, 2016) ("Given the significance of the missing records and the impact their absence had on the ALJ's decision, the ALJ should have tried to obtain the

---

[5] The court discusses below the significance, to this decision, of LCSW Parker's treatment notes, which were subsequently submitted to the Appeals Council.

records on his own after not hearing from [the plaintiff's] counsel. By not doing so, the ALJ created a gap in the record that necessitates remand."); *Martin v. Comm'r of Soc. Sec.*, No. 18-CV-0720, 2020 WL 611015, at *2 (W.D.N.Y. Feb. 10, 2020) (finding that the ALJ had a heightened duty to recognize that potentially significant treatment notes were absent and to make an effort to obtain those notes and by failing to do so the ALJ failed to develop the record by either obtaining a functional assessment "or at the very least ordering a consulting psychiatric examination."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-9040, 2021 WL 5154112, at *3 (S.D.N.Y. Nov. 5, 2021) ("[G]iven the absence of treatment records that clearly exist or a mental health functional assessment from his treating sources or from a consultative source[,] . . . [t]he ALJ's failure to develop the record concerning Plaintiff's mental health treatment and functioning requires remand.").

The court cannot find the ALJ's failure to fully and fairly develop the administrative record by trying to obtain the social worker's treatment notes constitutes harmless error.  Even under the amended regulations governing medical opinion evidence, district courts in the Second Circuit recognize the "foundational nature" of direct observation of a patient, and "consistency with those observations" is a factor in evaluating the value of a medical opinion. *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vt. July 14, 2020).

The importance of the longitudinal record is paramount in cases involving psychiatric impairments.  "Mental health patients have good days and bad days; they 'may respond to different stressors that are not always active.'"  *Pagan v. Saul*, No.

18-CV-7012, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (citation omitted).

"Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (citations omitted). "The ALJ had a duty to review the records of plaintiff's providers for her mental health impairments before reaching a conclusion regarding plaintiff's mental health limitations. *Brittany F. v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-1365 (ATB), 2020 WL 838076, at *9 (N.D.N.Y. Feb. 02, 2020).

"An ALJ's ultimate conclusions might not change following adequate development of the record. Even so, a plaintiff is always entitled to a decision based on a fully developed record." *Alford v. Saul*, 417 F. Supp. 3d 125, 141 (D. Conn. 2019) (citing *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 159-60 (W.D.N.Y. 2018) ("[W]here the record is not otherwise complete . . . the ALJ's duty to further develop the record is triggered, and the ALJ's failure to satisfy that duty is reversible error.") and *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, at *10 (W.D.N.Y. July 2, 2012) ("The failure to develop the record cannot be harmless error [where] the ALJ relied on perceived gaps in the medical evidence to find Plaintiff not disabled.")).

### 2.   Consultative Examination

The ALJ acknowledged the opinions of two state agency medical consultants, Dr. Hoffmann and Dr. Anderson, neither of whom found sufficient evidence to determine the "severity" of the plaintiff's recognized mental health impairment. (T. 14, 150, 159,

173, 177).  The ALJ nonetheless relied on the clearly "limited" evidence of record, other than the opinion of LCSW Parker, which he discounted, to make a determination that plaintiff's mental health impairments were not severe.  (T. 14).  While the primary care treatment notes that the ALJ considered marginally mention the plaintiff's mental health status at the time of the visits, none of these entries address any limitations her mental health impairments could have on work-related functions.  (T. 486-588).

Based on authority cited above, the ALJ inappropriately applied his lay analysis to the limited medical records to assess "severity" of plaintiff's mental health impairments.  He further erred by failing to develop the record by obtaining a medical consultant to examine her and assess her work-related mental health limitations.  *See, e.g.*, *Plisko v. Comm'r of Soc. Sec.*, No. 1:18-CV-827, 2020 WL 428059 (W.D.N.Y. Jan. 28, 2020) (The court found there was no professional medical or psychiatric opinion in the record linking the medical evidence (i.e. plaintiff's mental status examinations) to her functional abilities and at the very least should have ordered a consulting psychiatric examination); *Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-849, 2009 WL 5167650 (N.D.N.Y. Dec. 18, 2009) (remanding to the ALJ because "the ALJ erred in failing to obtain a current psychiatric consultative examination to evaluate his mental functioning"); *Molt v. Comm'r of Soc. Sec.*, No. 1:05-CV-418 (NPM/VEB), 2009 WL 5214920 (N.D.N.Y. Dec. 28, 2009) (noting that if the plaintiff's treating psychiatrist is unable to provide an assessment, the ALJ was obligated to send the plaintiff to a psychiatric consultative exam).  These errors further support remand.

## VII.   **EVIDENCE SUBMITTED TO THE APPEALS COUNCIL**

### A.   **Legal Standards**

"The Appeals Council must consider additional evidence that a claimant submits if (1) the claimant can show good cause for not submitting it to the ALJ; (2) it is new, material, and relates to the period on or before the ALJ's decision; and (3) there is a reasonable probability that it would change the outcome of the decision." *King v. Comm'r of Soc. Sec.*, No. 19-CV-6222, 2020 WL 5248473, at *1 (W.D.N.Y. Sept. 2, 2020) (citing, inter alia, *Simon v. Berryhill*, No. 16-CV-4088, 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 19, 2017); 20 C.F.R. §§ 404.970(a)(5), (b)).  "Evidence is material if it is relevant to the claimant's condition during the time period for which benefits were denied and there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently.  *Id.* (citing *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)).

### B.   **Analysis**

Plaintiff submitted additional medical records from Helios Care to the Appeals Council, after the ALJ's decision, but before the Appeals Council denied review.  (T. 1-2).  Those records included treatment records from LCSW Jennifer Parker assessing plaintiff's mental condition and her pain and other symptoms during the time period from August 2017 through October 2018.  (T. 76-107).  This newly submitted medical evidence related to the period between plaintiff's alleged onset date and the ALJ's decision.  The Appeals Council tersely found that the evidence did not show a

reasonable probability that it would change the outcome of the ALJ's decision.  (T. 2).

The opinion letters of LCSW Parker that were considered by the ALJ, concluded, inter alia, that plaintiff was unable to maintain a consistent ability to regulate her emotions.  (T. 772).  These uncontrollable emotional bursts would occur "3-4 times a week and can last for hours."  (*Id.*)  Parker also notes that the plaintiff does have good days with no emotional outbursts, but those days are inconsistent and unsustainable.  (*Id.*)  As noted above, the ALJ did not consider LCSW Parker's opinion persuasive because, inter alia, the record did not include any supporting treatment notes.

LCSW Parker's opinions are, in fact, supported by treatment records from forty counseling sessions she performed with the plaintiff.  (T. 76-103).  The records show uncontrollable emotional outbursts which the plaintiff had difficulty regulating[6] (T. 81, 84, 87, 88, 90, 93, 96, 103) and difficulty focusing.  (T. 99).  Frequent and consistent emotional outbursts of extended duration would impact the plaintiff's ability to concentrate, persist, or maintain pace.  The ability to concentrate, persist, or maintain pace is the third of the "paragraph B" criteria of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 criteria, used to determine mental functioning.  The only document that the ALJ cited in support of his finding that claimant had no limitations in concentrating, persisting, or maintaining pace was the June 21, 2017 progress note of plaintiff's primary care physician assistant that stated that plaintiff's cognition was "normal."  (T. 14, 534 (Ex. 3F at 72)).  That same progress note stated that plaintiff was "anxious" and "tearful

---

[6] One of the treatment records indicates that the plaintiff was able to regulate one of her emotional outbursts.  (T. 98).  The next entry, two months later, indicates that the plaintiff was no longer coping at the prior level.  (T. 99).

throughout examination when talking about raising son as single mother and loss of husband." (T. 534). The support in the ALJ's opinion for his application of the paragraph B criteria was thin, at best,[7] and the new treatment notes should have caused a diligent ALJ to reconsider his view that plaintiff's mental health impairment at least minimally impacted her work-related functions. The fact that the ALJ discounted LCSW Parker's opinion based on the absence of supporting treatment notes would further make this new evidence material to the ALJ's decision.

Even if the new treatment notes would have not altered the ALJ's views regarding the persuasiveness of LCSW Parker's opinions, the court continues to find that the ALJ would have still fatally failed in his obligation to develop the record. If the record before the ALJ were found to have no persuasive medical opinion evidence regarding plaintiff's work-related limitations related to her mental health impairment, the ALJ would have been obligated to develop the record, e.g., by arranging for a mental health consulting examination, rather than engaging in lay analysis of primary medical records.

## VIII.  PLAINTIFF'S REMAINING ARGUMENTS.

The full development of the administrative record on remand will necessarily impact the remainder of the ALJ's decision, including any other issues raised by plaintiff that this opinion has not addressed. Therefore, this court declines to address

---

[7] *See, e.g., Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 5154112, at *3 ("This Court questions the ALJ's conclusions about Plaintiff's mental health given the absence of treatment records that clearly exist or a mental health functional assessment from his treating sources or from a consultative source and reliance on cherry-picked comments from doctors who were not evaluating or treating Plaintiff for his mental health conditions.").

plaintiff's remaining arguments.  *See, e.g.*, *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" after the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (holding the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## IX .  NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). Even though the ALJ's decision is tainted by error, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled." Thus, I cannot order a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for appropriate supplementation of the medical evidence as necessary to develop the record, an appropriate determination of plaintiff's severe impairments and residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order.

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated:  October 19, 2022

Andrew T. Baxter
U.S. Magistrate Judge